**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herbert W. NEAL, Defendant-Appellant.**

**Nos. 86–2218, 86–2466.**

United States Court of Appeals,
Tenth Circuit.

July 7, 1987.

Robert K. McCune, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, Okl., for defendant-appellant Herbert W. Neal.

Laura Heiser, Dept. of Justice, Washington, D.C. (Charles F. Rule, Acting Asst. Atty. Gen., and John J. Powers, III, Dept. of Justice, Washington, D.C., and Laurence K. Gustafson and Kent Gardiner, Attys., Dept. of Justice, Dallas, Tex.), for plaintiff-appellee, U.S.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge.

Defendant-appellant Herbert Neal (Neal) appeals his conviction on two counts of perjury in violation of 18 U.S.C. Sec. 1623 upon charges that he knowingly made false material declarations before two separate grand juries in the Western District of Oklahoma on October 4, 1983, and November 20, 1985. The case was tried by the Court. Neal was found guilty following a two day non-jury trial in August 1986.[1]

In this appeal, Neal contends that the trial court erred in failing to dismiss the indictment because the government did not prove that his testimony before the grand juries was material to any ongoing investigation before those grand juries. In addition, he claims that the trial court erred in failing to sustain his motion to dismiss the indictment on grounds of double jeopardy because, without the presence of required materiality, his trial for perjury was a duplicate of his prior earlier trial and conviction for mail fraud.

In 1982, Neal was convicted in the Western District of Oklahoma on thirty-three counts of a thirty-four count indictment charging him with mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. Sec. 1341 and 18 U.S.C. Sec. 2. His prosecution followed an investigation into kickback payments made to various county commissioners in the State of Oklahoma by suppliers furnishing equipment or materials for county road and bridge building. During the period covered by the indictment, Neal worked as a salesman for three companies in Ponca City, Oklahoma, that supplied such materials. At the mail fraud trial, seven different county commissioners testified that they had received kickbacks from Neal. On appeal, we affirmed Neal's convictions for mail fraud. *United States v. Neal,* 718 F.2d 1505 (10th Cir.1983), *cert. den.* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984).[2]

On June 18, 1986, after his mail fraud convictions were affirmed by this court, the two count indictment for perjury was returned. Count I of the Indictment charged that Neal made twenty false material declarations during his 1983 grand jury appearance, and Count II charged that he made four false material declarations during his 1985 appearance, in violation of Sec. 1623 of Title 18 U.S.C., which provides in pertinent part that:

"(a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording or other material, knowing the same to contain any false material declaration, shall be (guilty of an offense against the United States)."

It should be noted that both of Neal's grand jury appearances took place after his conviction of mail fraud.

Neal was employed as a salesman with Stewart Supply, Inc. of Ponca City, Oklahoma, a supplier of highway construction materials, from about 1970 to about 1979. He was employed from February, 1980, until September, 1981, as a salesman with Evans & Associates Enterprises, Inc., a supplier of highway construction materials and equipment, a business conducted through affiliates of Evans & Associates Enterprises, Inc., including Evans & Associates Construction Company, Inc. (Evans & Associates) and Redstone Industries, Inc.

The perjury Indictment charged that the two grand juries, in each instance, were "conducting an investigation to determine, among other things, whether any person or company engaged in the business of selling

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

1. Neal was sentenced to a term of 180 days and a fine of $5,600.00 on Count I. Although he was found guilty on Count II of the indictment, no fine or jail term was imposed except for a required $50.00 assessment.

2. As a result of his mail fraud convictions, Neal was sentenced to a term of ten years imprisonment and fined $2,000.00. The sentence was later reduced to a five year term.

highway construction materials, equipment or supplies to counties and municipalities in the State of Oklahoma had paid any kickbacks or bribes in connection with such sales, in violation of, among other statutes, Title 18, United States Code, Section 1341," —and that it was material to the grand jury's investigation to determine if Neal "had any knowledge of, or information concerning, the payment of kickbacks or bribes in connection with sales of highway construction materials, equipment and supplies to counties and municipalities in the State of Oklahoma"—and that it was also material to the investigation "to determine if Herbert W. Neal had participated in such conduct."

The false declarations set out in the indictment consisted of either a false denial or a false assertion of a failure of recollection related to whether or not Neal had paid cash kickbacks or bribes to public officials in connection with sale of materials and supplies to county governments in the State of Oklahoma.

Prior to trial on the perjury indictment, Neal filed motions to dismiss the indictment because of alleged double jeopardy and the lack of materiality of the alleged declarations before the grand jury. The motions were overruled and Neal appealed to this court. Thereafter, the District Court entered an order determining that Neal's appeal to the Tenth Circuit on grounds of double jeopardy was frivolous, and refused to stay the trial of the perjury indictment. This Court affirmed the district court's denial of the motion to dismiss, and denied Neal's application for a stay of his trial on the perjury charges. *United States v. Neal,* Nos. 86–2218 and 86–2240, Order of the Court filed August 22, 1986.

## FACTUAL BACKGROUND

Based upon uncontested evidence presented by the government, the trial court made findings of fact, which may be summarized in the following manner:

Following his conviction of mail fraud, Neal was subpoenaed on October 4, 1983, to testify before a grand jury sitting in the Western District of Oklahoma. His testimony was compelled, pursuant to a grant of immunity issued under 18 U.S.C. Sec. 6001 et seq. This grand jury was continuing its investigation of corruption in county governments and was seeking information regarding other county commissioners who may have received bribes. The jury was also seeking to develop information about the involvement of Neal's employer, Evans & Associates, in the paying of bribes and kickbacks.

While testifying before this 1983 grand jury, Neal denied ever paying kickbacks to *any* county commissioner, and denied having any recollection of ever paying kickbacks to any county commissioner.

On November 20, 1985, Neal was subpoenaed to testify before a second grand jury sitting in the Western District of Oklahoma. He appeared and testified until asked about kickbacks to county commissioners, when he invoked his Fifth Amendment privilege. His testimony was then compelled and he was again granted immunity pursuant to 18 U.S.C. Sec. 6001 et seq. This 1985 grand jury was investigating allegations of bribery of public officials by Neal's employer, Evans & Associates, and Lloyd I. Evans, in connection with possible charges under the Racketeer Influenced and Corrupt Organization Statute (RICO) 18 U.S.C. Sec. 1963. Neal was subpoenaed by this grand jury because of his position as a former salesman with Evans & Associates, and his conviction on 33 counts of mail fraud for paying bribes or kickbacks to county officials.

An Indictment charging Evans & Associates Construction Co., Inc. and Lloyd I. Evans, among· others, with RICO violations, was filed on April 21, 1986, and named the defendant-appellant here, Herbert W. Neal, as a participant in a conspiracy to corruptly offer and give gifts, including money, to county commissioners.

During his November 20, 1985, grand jury appearance, Neal denied having any recollection of ever giving a kickback to *any* county commissioner.

During Neal's perjury trial, seven former county commissioners testified that they

had received cash payments from Neal in connection with the sale of equipment or supplies to their counties while Neal was an employee of Steward Supply, Inc., and while he was an employee of Evans & Associates.

Based upon the testimony at trial, the court found that Neal had made the following payments:

a. Clifton Honeyman, commissioner for Grant County, received cash kickbacks on several occasions—in particular, a payment from Neal on an asphalt overlay project won by Evans & Associates in December, 1980, and a kickback from Neal on the purchase of a crane from Redstone Industries, a subsidiary of Evans & Associates, in October, 1980;

b. Leonard V. Johanning, commissioner for Grant County, received cash kickbacks from Neal on several occasions, including a payment of $500.00 to $1,000.00 each on a Fiat grader purchased from Redstone in September, 1980, and a Fiat dozer purchased from Redstone in December, 1980;

c. Dwight Hughey, commissioner for Alfalfa County, received a 10% kickback from Neal in connection with the purchase of culvert pipe from Stewart Supply in December, 1975;

d. George O'Neal Gray, commissioner for Alfalfa County, received 10% kickbacks from Neal on purchases from Stewart Supply, and had also arranged for a kickback from an unsuccessful asphalt project bid submitted by Evans & Associates in April, 1980;

e. Clifford Ellis, commissioner for Pawnee County, received approximately $1,000.00 from Neal in connection with the purchase of a Massey Ferguson loader from Stewart Supply in November, 1975, a $2,500.00 kickback on the purchase of a CAT motor grader from Stewart in October, 1979, and a kickback of a used piece of equipment on the purchase of a brush hog rotary mower from Evans & Associates in June, 1980;

f. James L. Roe, commissioner for Payne County, received cash from Neal in connection with the purchase of a CAT motor grader from Stewart Supply in March, 1979, and a Case dozer from Redstone in August, 1980, and he also received various road supplies from Stewart and Redstone, for which he received 10% cash kickbacks;

g. Robert White, commissioner for Payne County, received $500.00 cash from Neal with the purchase of a CAT motor grader from Stewart in March, 1979, a cash kickback from Neal on a White winch truck from Redstone in July, 1980, and a $700.00 cash kickback from Neal in the Spring, 1981, for past purchases of asphalt from Evans & Associates.

The trial court also found that on September 23, 1981, Neal resigned from Evans & Associates, submitting a resignation letter which was in effect a confession by Neal that he had paid kickbacks to county commissioners.

The court found from the evidence that Neal had testified falsely before the 1983 and 1985 grand juries as to material matters.

In this appeal, Neal contends that the government failed to prove that his testimony was "material" to any ongoing investigation of the grand juries. This argument is made upon the premise that in the mail fraud indictment, he was charged with paying kickbacks to Commissioners Johanning, Roe, White, Honeyman and Gray, and that these commissioners testified against him in that prosecution. The jury there found him guilty on all counts except the one which named Evans & Associates as Neal's employer. In the 1983 grand jury appearance, Neal was asked about kickbacks paid to Johanning, Honeyman, Roe, Gray and Ellis. Neal contends that each of these commissioners had plea agreements with the government prior to the mail fraud trial in 1982, and thus the government had completed its investigation of those commissioners, and kickbacks to them could not be material to any investigation then pending before the grand juries. According to Neal, the real subject matter of the grand jury investigations was to establish the guilt of Jerry Evans, Evans & Associates, and two other county com-

missioners who had not been previously indicted (Vap and Hall), but Neal was not charged with perjury in connection with any testimony concerning these parties. It is Neal's contention that the government only indicted him for perjury in order to coerce him to testify against Mr. Evans.[3]

The elements of the crime of perjury under 18 U.S.C. Sec. 1623 are: Testimony under oath, before a grand jury, that is false in one or more respects, which is knowingly given, and which is material to that grand jury's investigation. See *Hale v. United States*, 406 F.2d 476, 479 (10 Cir.1969), *cert. den.* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969). The crime of perjury has been defined by this Court as the act of "knowingly and willfully giving false testimony relating to a material matter." See *United States v. Jones*, 730 F.2d 593, 597 (10th Cir.1984).

There is no dispute in this case that Neal's testimony was given under oath before the grand jury, and the evidence before the trial court was sufficient to support the finding that Neal's testimony was false, and knowingly given, as charged in the indictment. As to the element of materiality, under the provisions of 18 U.S.C. Sec. 1623, false statements to a grand jury are material if they are relevant to any matter before the grand jury, and their falsity "would have the natural tendency to influence the grand jury's investigations." *United States v. Prantil*, 764 F.2d 548, 557 (9th Cir.1985); and *see, United States v. Masters*, 484 F.2d 1251, 1254 (10th Cir. 1973).

As noted by the trial court, the element of materiality was different for each count of the Indictment:

"The 1983 grand jury was conducting a continuing investigation of county commissioner corruption, whereas the 1985 grand jury was conducting an investigation of Defendant's former employer, Evans & Associates, for possible RICO vio-

lations under 18 U.S.C. Sec. 1961. Based on the definition of materiality as recited below, the element of materiality for each count 'require(d) proof of an additional fact which the other (did) not.'"

Our review of the record discloses that the trial court properly concluded that the defendant's false statements were material to the inquiries because they misled the grand juries and impeded their investigations into the payment of bribes and kickbacks to county commissioners and impeded an investigation into possible RICO violations on the part of Neal's employer, Evans & Associates. The scope of the grand juries' investigations, and the materiality of Neal's testimony to those investigations, was aptly described by the trial court in its findings which were fully supported by the evidence:

"1. *The 1983 Grand Jury.*

"From the testimony of FBI Special Agent Henry C. Gibbons, the coordinator of the CORCOM (corrupt commissioner) investigations, as well as from the transcript of the Defendant's 1983 grand jury testimony, it is clear that the FBI and the United States Attorney's Office had not concluded their inquiry into county commissioner corruption at the time the Defendant testified.

"Special Agent Gibbons testified that the investigation was widespread; that the FBI was trying to expand the investigation into other counties and possibly to include corruption at the state level. In fact the investigation was only recently closed in the early part of this year.[4] It is apparent, therefore, that the grand jury's inquiry was continuing at the time Defendant testified in 1983. Indeed, the Defendant was subpoenaed before the grand jury precisely to further the grand jury's attempt to discover if additional county commissioners were involved in accepting kickbacks. (Additional, in the sense of those county commissioners

---

**3.** Neal claims that since his conviction for perjury, the indictment against Jerry Evans has been dismissed. According to Neal, "(t)his occurrence manifests the government's need to indict appellant in order to coerce him to testify against Mr. Evans."

**4.** The investigation lasted from January 1979, until the summer of 1986. Vol. III R. Tr., pp. 17, 18.

who had not already been found out.)[5] Moreover, the Defendant was merely a salaried salesman. The 1983 grand jury was rightfully interested in who provided him with the cash to pay kickbacks to county officials and who, if anyone, was also involved from the company that employed the Defendant.

"2. *The 1985 Grand Jury.*

"The materiality of the Defendant's statements before the 1985 grand jury was established by the testimony of the grand jury foreman, Robert Metzinger, and by the transcript of Defendant's grand jury testimony. The foreman's testimony established that Evans & Associates, Defendant's former employer, was under investigation for possible RICO violations, among other things, in connection with bribes and kickbacks paid to public officials. Since the Defendant was convicted in 1982 in connection with paying bribes and kickbacks to county officials during his employment with Evans & Associates, his testimony clearly was material to the substance and scope of the grand jury's investigation.

\* \* \* \* · \* \*

"An admission by the Defendant that he paid kickbacks would have greatly aided the 1983 grand jury investigation. Defendant then could have provided information about his personal involvement (including how he obtained the cash and how he made payments) which would have expanded the grand jury's understanding of the kickback operation and possibly have led to information on additional county commissioners, on other vendors and suppliers, and on the Defendant's own employers. Defendant's denials, however, deterred the grand jury from expanding its inquiry in these areas, thereby hindering its investigation.

"The 1985 grand jury sought information from Defendant linking Defendant's former employer to bribery of public officials. Defendant was a salaried employee of Evans & Associates, making an income insufficient to pay kickbacks. It is reasonable to assume that the cash needed for kickbacks came from another source, possibly the Defendant's employer. If the Defendant had admitted paying kickbacks, further probing likely would have shown the source of kickback money. The Defendant's false claim of failure of recollection directly impeded the grand jury in its investigations of Evans & Associates."

Neal next contends that his motion to dismiss the perjury indictment should have been sustained on double jeopardy grounds because he was in effect charged with committing perjury at his trial on the mail fraud charges. He contends that the issue of whether he paid kickbacks to county commissioners and specifically whether he paid kickbacks to commissioner Honeyman, was litigated in the mail fraud trial, and necessarily decided in that trial by the finding of acquittal with regard to the payment of kickbacks to Honeyman, and thus, his prosecution for perjury was barred by the doctrine of collateral estoppel.

■ Mail fraud is not the same offense as perjury. The issue in the mail fraud prosecution was whether or not Neal used the mails in a scheme or artifice to defraud, while the issue in the case before us is whether or not Neal lied when he testified to two grand juries that he never paid kickbacks to any county commissioner. Neal was not subjected to double jeopardy because conviction under the mail fraud statute requires proof of a fact which the perjury statute does not. See *United States v. Puckett,* 692 F.2d 663, 667 (10th Cir.1982) *cert. den.,* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

■ Neal's assertion that the doctrine of collateral estoppel precludes prosecution because the issues in the perjury trial were the same as those "necessarily decided" by the jury in the mail fraud trial is without merit. As noted by the trial court, during the mail fraud trial, Neal denied paying

---

5. By March, 1981, the FBI had developed 50–60 cases against County Commissioners in the western half, and some part of Southeastern Oklahoma. Vol. III, R.Tr. p. 19.

any kickbacks, but he was acquitted on only one of the 34 counts, one of 13 involving payments to Commissioner Honeyman. In the mail fraud trial, the jury could have acquitted Neal on Count 23 for a number of reasons, not necessarily because the jurors believed Neal did not pay kickbacks to Honeyman on the occasion in question, because Count 23 also required proof that the bribe payment was part of a scheme to defraud, and that the mails were used in that scheme. Certainly, Neal's acquittal on one count does not decide the issue of whether he paid kickbacks to Honeyman because he was convicted on 12 other counts of exactly such conduct.

The judgment of conviction is AFFIRMED.